# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HERBERT PICHON** | **CIVIL ACTION** |
| **versus** | **NO. 11-615** |
| **TERRY TERRELL, WARDEN,**<br>**ALLEN CORRECTIONAL CENTER** | **SECTION: "F" (3)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. <u>See</u> 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Herbert Pichon, is a state prisoner incarcerated at the Allen Correctional Center, Kinder, Louisiana. On August 30, 2006, he was convicted of possession of cocaine under Louisiana law.[1] On January 19, 2007, he pleaded guilty to being a fourth offender and was sentenced as such to a term twenty years imprisonment without the benefit of probation or

---

[1] State Rec., Vol. II of V, transcript of August 30, 2006, p. 122; State Rec., Vol. I of V, minute entry dated August 30, 2006; State Rec., Vol. I of V, jury verdict form.

suspension of sentence.[2]  On February 8, 2008, the Louisiana First Circuit Court of Appeal affirmed petitioner's conviction, habitual offender adjudication, and sentence.[3]  The Louisiana Supreme Court then denied his related writ application on February 6, 2009.[4]

On August 6, 2009, petitioner filed an application for post-conviction relief with the state district court.[5]  That application was denied on September 15, 2009.[6]  His related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal on December 7, 2009,[7] and by the Louisiana Supreme Court on December 10, 2010.[8]

On February 28, 2011, petitioner filed the instant federal application for *habeas corpus* relief in the United States District Court for the Middle District of Louisiana.[9]  The matter was then transferred to this Court.[10]   On July 20, 2011, the state filed its response.[11]  On June 6,

---

[2] State Rec., Vol. II of V, transcript of January 19, 2007; State Rec., Vol. I of V, minute entry dated January 19, 2007.

[3] State v. Pichon, No. 2007 KA 1503, 2008 WL 441481 (La. App. 1st Cir. Feb. 8, 2008); State Rec., Vol. III of V.

[4] State v. Pichon, 999 So.2d 768 (La. 2009) (No. 2008-KO-0707); State Rec., Vol. III of V.

[5] State Rec., Vol. III of V.

[6] State Rec., Vol. III of V, Reasons for Denying Post Conviction Relief.

[7] State v. Pichon, No. 2009 KW 1918 (La. App. 1st Cir. Dec. 7, 2009); State Rec., Vol. III of V.

[8] State *ex rel.* Pichon v. State, 51 So.3d 719 (La. 2010) (No. 2009-KH-2806); State Rec., Vol. III of V.

[9] Rec. Doc. 1.

[10] Rec. Doc. 3.

[11] Rec. Dos. 13 and 14.

2012, upon the retirement of United States Magistrate Judge Louis Moore, this matter was transferred to the undersigned United States Magistrate Judge for the issuance of a Report and Recommendation.[12]

In its response, the state conceded that petitioner's application was timely filed; however, the state argued that not all of petitioner's claims had been properly exhausted in the state courts. The state nevertheless alternatively argued that petitioner's claims were also subject to dismissal because they had no merit. In that the claims are in fact meritless, the undersigned recommends that they simply be rejected on that basis in the interest of judicial economy.[13]

## I. Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

---

[12]  Rec. Doc. 15.

[13]  A federal court has the authority to deny *habeas* claims on the merits, regardless of whether the petitioner exhausted his state court remedies and whether exhaustion is waived by the state. 28 U.S.C. § 2254(b)(2); Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998); Woods v. Cain, Civ. Action No. 06-2032, 2008 WL 2067002, at *8 n. 8 (E.D. La. May 13, 2008).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); <u>see also</u> 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." <u>Bell</u>, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir.) (internal quotation marks, ellipses, brackets, and footnotes omitted), cert. denied, 131 S.Ct. 294 (2010).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000). The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."), cert. denied, 132 S.Ct. 1537 (2012).

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court recently held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of

imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added).

II.  Facts

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of this case as follows:

> Sergeant Nikki Mistretta with the Slidell Police Department, Special Agent Keith Humphries of the Drug Enforcement Administration, and Sergeant Danny Fonte of the St. Tammany Parish Sheriff's Office were members of a task force investigating certain high-crime areas of Slidell for narcotics-related activity. On the night of November 3, 2004, Sergeant Mistretta and Agent Humphries were riding in an unmarked black pickup truck on Shady Lane. Sergeant Fonte was riding separately in the same area. There had been previous anonymous calls to the Sheriff's Office about drug activity at a particular residence on Shady Lane. Sergeant Mistretta drove by this residence and observed an occupied vehicle in the driveway. A female approached the driver's side window of the vehicle and, upon seeing Sergeant Mistretta, spun around and headed toward the residence. According to Sergeant Mistretta, who testified at both the motion to suppress hearing and the trial,[FN1] the female recognized him as a police officer. Sergeant Mistretta and Agent Humphries were wearing TAC (bulletproof) vests with markings that identified them as law enforcement officers.

[FN1] In determining whether the ruling on defendant's motion to suppress was correct, we are not limited to the evidence adduced at the hearing on the motion. We may consider all pertinent evidence given at the trial of the case. State v. Chopin, 372 So.2d 1222, 1223 n.2 (La. 1979).

Based on what he considered suspicious behavior by the female, Sergeant Mistretta exited the pickup and approached the driver's side of the vehicle, which was occupied by three men. Agent Humphries stood at the rear of the vehicle. Sergeant Fonte had been contacted and arrived moments later. Sergeant Mistretta asked the driver to step out and asked if he could search the vehicle. The driver consented to the search. Agent Humphries and Sergeant Fonte asked the two passengers to exit the vehicle. The defendant was the front-seat passenger. Within seconds of searching the vehicle, Sergeant Mistretta found a crack pipe on the front seat. During the search, Sergeant Mistretta observed the defendant put his hand in his pocket and then put that hand to his mouth. All three occupants denied knowledge of the crack cocaine pipe. When Sergeant Mistretta advised the three men that they were being placed under arrest, the defendant fled. Sergeant Mistretta and Agent Humphries pursued the defendant. During the chase, the defendant spit something out of his mouth. Moments later, the defendant was apprehended, and Sergeant Mistretta returned to the spot where the defendant had spit something out and found a small baggie containing crack cocaine. The defendant denied that the crack cocaine was his. Sergeant Mistretta also found about $2,200 on the defendant's person. The crack pipe found in the vehicle had residue on it that tested positive for cocaine.[14]

Additionally, the record reflects that Mistretta procured and executed a search warrant to obtain a DNA sample from petitioner by taking a buccal swab of his mouth. That sample was then compared to saliva recovered from the baggie containing the cocaine, and it was determined that the DNA from the swab and the baggie were consistent and would occur with the

---

[14]  State v. Pichon, No. 2007 KA 1503, 2008 WL 441481, at *1 (La. App. 1st Cir. Feb. 8, 2008); State Rec., Vol. III of V.

frequency of approximately one in ten billion persons of the Caucasian, African-American, and Hispanic population.[15]

III.  Petitioner's Claims

A.  Due Process/Ineffective Assistance of Trial Counsel

Petitioner's first claim is that he was denied due process in the state post-conviction proceedings by the state court's refusal to carefully consider his ineffective assistance of counsel claims.

To the extent that petitioner is simply arguing that he was denied due process in the state post-conviction proceedings, that claim is not cognizable.  Federal *habeas corpus* relief cannot be granted to remedy such an error.  As the United States Fifth Circuit Court of Appeals has explained:

> [O]ur circuit precedent makes abundantly clear that errors in state postconviction proceedings will not, in and of themselves, entitle a petitioner to federal habeas relief.  See, e.g., Hallmark v. Johnson, 118 F.3d 1073, 1080 (5th Cir. 1997) ("[I]nfirmities in state habeas proceedings do not constitute grounds for relief in federal court."); Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.") (internal quotations omitted).  Rather, we must find constitutional error at the trial or direct review level in order to issue the writ.

Morris v. Cain, 186 F.3d 581, 585 n.6 (5th Cir. 1999); see also Duff-Smith v. Collins, 973 F.2d 1175, 1182 (5th Cir. 1992); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *23

---

[15]    State Rec., Vol. II of V, transcript of August 30, 2006, pp. 36-41; State Rec., Vol. I of V, DNA Test Results.

(E.D. La. Oct. 29, 2009); <u>Baham v. Allen Correctional Center</u>, Civ. Action No. 07-4075, 2009 WL 3148757, at *3 (E.D. La. Sept. 30, 2009); <u>Davis v. Cain</u>, Civ. Action No. 07-6389, 2008 WL 5191912, at *6 (E.D. La. Dec. 11, 2008).

To the extent that petitioner is attempting to also reassert his underlying ineffective assistance of counsel claims, those claims have no merit. The United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." <u>Jernigan v. Collins</u>, 980 F.2d 292, 296 (5th Cir. 1993); <u>see also</u> <u>Clark v. Johnson</u>, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. <u>Strickland</u>, 466 U.S. at 697.

To prevail on the deficiency prong of the <u>Strickland</u> test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. <u>See</u> <u>Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. <u>See</u> <u>Strickland</u>, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case,

viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

In the instant case, petitioner claims that his counsel was ineffective for (1) abandoning the case as hopeless, (2) failing to file pretrial pleadings, (3) failing to meet with petitioner sufficiently, (4) failing to investigate the case adequately, (5) failing to prepare an adequate defense, (6) failing to argue that the DNA test was inaccurate, and (7) failing to interview and subpoena witnesses for trial. For the following reasons, those contentions clearly have no merit.

In support of his contention that counsel abandoned the case as hopeless, petitioner points to counsel's statement on the record, made outside of the presence of the jury, concerning petitioner's decision to decline a plea bargain. Counsel stated:

> I just want to put on the record at this time that I've advised my client
> fully that he's facing a life sentence, twenty being the minimum; life

being the maximum sentence in this case, that due to his prior convictions, which I've verified at this point. He is, at the very minimum, a quad bill. Based on that, it's my understanding that if he stepped up and accepted responsibility that he would receive a 25-year sentence. Because he is passed the second offender level he's not entitled to parole, and he is not entitled any good time if in fact is multiple billed, which the district attorney is actually seeking a life sentence in this case if he's convicted.

I've advised my client of this offer. I discussed it with his mother; I discussed it with him. I made my recommendations to him at this point and he's been advised that if we go further with this trial the deal will be withdrawn in light of the fact that he's not accepting responsibility. I've also advised him that if he receives a life sentence or anywhere near that, in all probability he will be sentenced to Angola – the Department of Corrections will send him to Angola. Whereas with the 25-year sentence, he has an opportunity to go to another facility, although no one can guarantee him that. And that with a fixed sentence in the future, he has an opportunity to go before the Pardon Board and get some consideration; no guarantees there either with his prior record, but at least he has the opportunity for consideration which is greater than sitting on a life sentence.[16]

Counsel clearly was of the opinion that it was in petitioner's best interest to accept the plea bargain, and these statements on the record were necessary simply to protect counsel against a possible future malpractice claim. They were no way indicative that counsel was abandoning the case as hopeless. Counsel's performance was not rendered deficient by these statements, and, because the statements were made outside of the jury's presence, they obviously did not result in any prejudice to petitioner. Therefore, this contention is clearly meritless.

As to petitioner's contention that counsel failed to file pretrial pleadings, that issue was likewise discussed on the record prior to trial and outside of the jury's presence. It was noted that because the state had provided "open file" discovery, there was no need for discovery motions.

_____

[16] State Rec., Vol. II of V, transcript of August 30, 2006, pp. 4-5.

It was further noted that (1) there was no need to file a motion to suppress a confession because there was no confession, (2) there was no need to file a motion to suppress the identification because petitioner was apprehended on the scene, (3) a motion to suppress the physical evidence had in fact been filed and denied, and (4) the DNA sample was not suppressible because it was taken pursuant to a search warrant.[17]  Clearly, counsel cannot be faulted for failing to file these or similar motions because they were either unnecessary or inapplicable.  See, e.g., Murray v. Maggio, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions.  The filing of pretrial motions falls squarely within the ambit of trial strategy.").  Moreover, because petitioner has not identified any other types of pretrial motions which purportedly should have been filed and shown that such motions would have been beneficial to the defense, he has failed to prove either that counsel performed deficiently in this respect or that prejudice resulted.  See United States v. Lewis, 786 F.2d 1278, 1283 n.4 (5th Cir. 1986); Lindsey v. Travis, Civ. Action No. 06-7852, 2007 WL 1237919, at *8 (E.D. La. Apr. 25, 2007).  Therefore, this contention likewise has no merit.

As to the contention that counsel failed to meet with petitioner sufficiently, counsel disputed that assertion.  Prior to trial and outside the presence of the jury, counsel stated on the record:

> [Petitioner] has seen another member of my firm.  I've provided him with all his reports, copies of everything.  He has had this case for many, many months.  He's been in jail for 20-odd months at this point.  He's familiar with the facts; my firm is more than familiar with the case having reviewed it.  My assessment of this case is clear and there is no issue regarding the case.  I can assure you I've advised him fully.  There's no logical reason at this point that our

---

[17]  State Rec., Vol. II of V, transcript of August 30, 2006, pp. 10-13.

firm is not prepared to go forward.  The DNA tests are clear; the lab
reporting tests are clear; the officer is clear; and the other parties
involved were charged in this case as well.[18]

Moreover, in any event, it is clear that "brevity of consultation time between a

defendant and his counsel, alone, cannot support a claim of ineffective assistance of counsel."

Murray, 736 F.2d at 282.  This was not a complicated case:  petitioner was caught on the scene,

observed disposing of cocaine, and the cocaine was additionally connected to him through DNA

evidence.  Petitioner has not shown what beneficial information could have been gleaned from

additional pretrial meetings.  This contention therefore fails because he has failed to meet either

prong of the Strickland analysis.  See United States v. Elliott, No. 95-30901,  1996 WL 556816, at

*1 (5th Cir. Sept. 9, 1996); Murray, 736 F.2d at 282-83; Davis v. Cain, Civ. Action No. 07-6389,

2008 WL 5191912, at *8 (E.D. La. Dec. 11, 2008).

As to the contention that counsel failed to investigate the case adequately, a petitioner

asserting a claim for inadequate investigation bears the burden to provide factual support as to what

further investigation would have revealed.  See Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir.

1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Davis, 2008 WL 5191912, at

*10.  In the instant case, petitioner has brought forth no evidence showing that further investigation

would have revealed any information whatsoever which would have been beneficial to the defense.

Without such evidence, he cannot make the required showing that he was prejudiced by the

allegedly inadequate investigation and his claim necessarily fails.  Everett v. Louisiana, Civ. Action

No. 08-4745, 2009 WL 1971370, at *5 (E.D. La. July 7, 2009).

_____

[18]  State Rec., Vol. II of V, transcript of August 30, 2006, p. 8.

As to the contention that counsel failed to prepare an adequate defense, petitioner identifies no potentially viable defense which counsel eschewed.  Sometimes, as is evidently the case here, when representing an obviously guilty client, counsel's only choice is to vigorously test the state's case and argue to the jury that the state has failed to carry its burden of proving that the accused is guilty beyond a reasonable doubt.  Simply because counsel was unable to fashion a nonexistent defense out of whole cloth does not mean that he performed deficiently or that prejudice resulted.  Therefore, this contention likewise has no merit.

As to the contention that counsel failed to argue that the DNA test was inaccurate, petitioner has brought forth no evidence whatsoever to demonstrate that the DNA test was in fact defective in any respect or subject to challenge on any valid grounds.  Because it has not been shown that there was any legal basis for such an argument, counsel cannot be found to have performed deficiently for failing to make one, and petitioner certainly cannot be found to have been prejudiced by that failure.

Lastly, as to the contention that counsel failed to interview and subpoena witnesses for trial, that claim fails because petitioner has not shown that the witnesses had any information beneficial to the defense and would have been available to testify at trial.  The United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain.  For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice *by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed*

> *testimony, and showing that the testimony would have been favorable*
> *to a particular defense.* This requirement applies to both uncalled lay
> and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted; emphasis added); see also Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

 Here, petitioner has produced no evidence, such as affidavits from the uncalled witnesses, demonstrating that they would have testified in a manner beneficial to the defense. Therefore, he clearly has not met his burden with respect to this claim. See, e.g., United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); Buniff v. Cain, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); Combs v. United States, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); Harris v. Director, TDCJ-CID, No. 6:06cv490,

2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").[19]

## B. Ineffective Assistance of Appellate Counsel

Petitioner next claims that his appellate counsel was also ineffective. Like claims alleging ineffective of trial counsel, claims of ineffectiveness of appellate counsel are analyzed under the two-pronged Strickland analysis requiring that a petitioner demonstrate both that counsel's

---

[19] The Court further notes that counsel had strategic reasons for not calling the witnesses. As he explained on the record prior to trial and outside the presence of the jury:

> I've heard now and I've explained this to both his mother and the defendant, I'm going to make this clear: You bring in witnesses that were there that under oath will basically support the police. They will testify that there was a crack pipe, which supports the district attorney's position. They will also – all the witnesses there, the other two guys who are named as his defense and the female, will say that he ran. All of those witnesses that he wants here will also say the police brought him back and arrested him for possession of cocaine.
> As an attorney who has been doing this for 30 years, I tell the Court it's my professional opinion that these witnesses – I don't want a big point of this in post-conviction relief or suggest as a problem – these witnesses will not assist this defendant. If they tell the truth under oath they will support the prosecution's case. If the mother and son think they should be here to hurt him; I don't and I won't call them. And as long as I'm his attorney, I don't believe that their positions will assist us in any way.
> Further, I know because of my preparation with my client what the true facts are in this case, and I have no reason to believe that these people are going to take the stand and lie and assist him in this case. That's where we are at. The witnesses aren't an issue, other than simply a last-minute claim at this point of ineffective assistance of counsel. These people will hurt him.

State Rec., Vol. II of V, transcript of August 30, 2006, pp. 15-16. The United States Supreme Court has made clear that federal *habeas* courts are not to lightly second-guess counsel's decisions on matters of trial tactics; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. Strickland, 466 U.S. at 689. Petitioner has not demonstrated that there is a valid reason to vary from that general rule in this case.

performance was deficient *and* that the deficient performance prejudiced his defense. The only difference is that, to establish prejudice resulting from *appellate* counsel's performance, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation. Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 286 (2000). Therefore, a petitioner must demonstrate a reasonable probability that, if appellate counsel's performance had not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error. Briseno, 274 F.3d at 210.

In the instant case, petitioner argues that counsel should have asserted on appeal that the Mistretta was not qualified or certified to collect the DNA sample. This claim has no merit for at least two reasons.

First, a contemporaneous objection at trial is normally required in order to preserve an error for appellate review. La.C.Cr.P. art. 841(A). In the instant case, defense counsel did not object to the introduction of the DNA evidence on this ground.[20] Because there was no such objection, appellate counsel was precluded from asserting this purported error on appeal and, if it nevertheless had been raised, the Court of Appeal would have rejected it as procedurally defaulted. As a result, petitioner cannot show a reasonable probability that he would have prevailed on appeal if appellate counsel had raised this issue. Therefore, he cannot show the prejudice required to support his claim. See Briseno, 274 F.3d at 207; see also Smith v. Robbins, 528 U.S. 259, 285

---

[20] Rather, defense counsel objected to the evidence only on the basis that it was "fruit of the poisonous tree." See State Rec., Vol. I of V, transcript of August 29, 2006, pp. 27-29.

(2000); <u>Weatherspoon v. Cain</u>, Civ. Action No. 10-4500, 2011 WL 4351397, at *34 (E.D. La. July 8, 2011), <u>adopted</u>, 2011 WL 4063611 (E.D. La. Sept. 13, 2011).

Second, even if the claim had been asserted on appeal and even if the Court of Appeal had been willing to overlook the procedural default, petitioner has not shown that he would have been granted relief on this claim.  For example, he has not demonstrated that Louisiana law requires any specific qualifications or certification to collect DNA samples.  The Court is unaware of any such provision of law, and the jurisprudence indicates that DNA evidence is routinely admitted at trial even when the person who collected the evidence had no specialized training.  <u>See, e.g.</u>, <u>State v. Draughn</u>, 950 So.2d 583, 596 (La. 2007) (police investigators without specialized training obtained buccal swab of defendant's mouth for DNA testing); <u>State v. Eason</u>, 3 So.3d 685, 688 and 691 (La. App. 2nd Cir. 2009).  Accordingly, even if this claim had been asserted and reviewed on direct appeal, there is no reasonable probability that petitioner's conviction would have been reversed or vacated.  Therefore, again, he cannot show the prejudice required to support his claim.

Petitioner also claims that appellate counsel should have asserted a claim challenging Mistretta's "expert testimony" concerning the results of the DNA testing.  This claim likewise has no merit.  As an initial matter, Mistretta did not testify as an expert on DNA testing; rather, he simply identified the laboratory report and read its conclusion into the record.[21]  Further, although Mistretta then technically mischaracterized those results, that error was immediately corrected.  Petitioner's claim is based on the following exchange during Mistretta's testimony:

---

[21]  State Rec., Vol. II of V, transcript of August 30, 2006, pp. 39-40.

Q.      So [the DNA Test Results are] telling you it's a one in ten
        billion chance that it's not him, that he is not the donor of the
        comparison to the unknown to the known.

A.      What it's saying is it's a match.

        MR. REGAN [defense counsel]:
                Your Honor, I object to the statement "it's a
        match."  He's certainly not qualified and that's not
        what that says.

        THE COURT:
                Sustained.[22]

Any misstatement was then again further clarified by Mistretta's subsequent testimony:

Q.      As the reports say, they don't say it's a match, do they?  They
        don't say it matches him.  It says he's not excluded at this
        point.  Correct?

A.      Yeah, one in ten billion.

Q.      In other words, what the thing says, so there's no
        misunderstanding with the jury, it's not saying that Mr.
        Pichon is matched, it just simply says he is not excluded from
        the group.  Correct?

A.      That's correct.[23]

Therefore, even if Mistretta technically misspoke by initially stating the DNA was

a "match," defense counsel's objection was sustained, the matter was further clarified, and there was

nothing more to challenge on appeal.  Accordingly,  appellate counsel did not perform deficiently

in failing to raise a claim concerning this exchange, and petitioner clearly suffered no prejudice.

---

[22]   State Rec., Vol. II of V, transcript of August 30, 2006, p. 40.

[23]   State Rec., Vol. II of V, transcript of August 30, 2006, p. 43.

<u>C.  Improper Chain of Custody</u>

Petitioner also claims that the physical evidence was wrongly admitted at trial because the chain of custody was not properly maintained.  Because this claim challenges an evidentiary ruling, this Court's review of the claim is necessarily limited.  As has been noted:

> States have traditionally been afforded substantial latitude in fashioning their own rules of evidence and criminal procedure.  Therefore, questions relating to the admissibility of evidence are matters of State law and generally do not give rise to constitutional errors which are subject to redress in Federal habeas corpus proceedings.

<u>Taylor v. Maggio</u>, 581 F. Supp. 359, 365-66 (E.D. La.) (citation omitted), <u>appeal dismissed</u>, 727 F.2d 341 (5th Cir. 1984); <u>see also</u> <u>Derden v. McNeel</u>, 978 F.2d 1453, 1458 (5th Cir. 1992) ("[E]rrors of state law, including evidentiary errors, are not cognizable in habeas corpus as such.").  Rather, the United States Fifth Circuit Court of Appeals has noted:

> We will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a "denial of fundamental fairness" under the Due Process Clause.  The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction.

<u>Neal v. Cain</u>, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted); <u>see also</u> <u>Little v. Johnson</u>, 162 F.3d 855, 862 (5th Cir. 1998) ("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted.").

In this case, however, petitioner has failed to establish even that the evidence was wrongfully admitted because evidence is not rendered inadmissible under Louisiana law simply due to defects in the change of custody.  The Louisiana Supreme Court has explained:

> In order to introduce demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is the one connected with the case; the lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than to its admissibility.

State v. Sam, 412 So.2d 1082, 1086 (La. 1982); see also Gordon v. Cain, Civ. Action No. 04-1058, 2006 WL 3469564, at *2 (E.D. La. Nov. 29, 2006). "The law does not require that the evidence as to custody eliminate all possibilities that the object has been altered." State v. Hansbro, 796 So.2d 185, 198 (La. App. 2nd Cir. 2001); see also State v. Dunbar, 798 So.2d 178, 181 (La. App. 4th Cir. 2001). "Ultimately, a chain of custody or connexity of the physical evidence is a factual matter for the jury." State v. Addison, 871 So.2d 536, 551 (La. App. 5th Cir. 2004).

Therefore, the evidence was properly admitted in this case even if the state failed to establish an airtight chain of custody. It was then up to defense counsel to attempt to raise doubt in the minds of the jurors regarding that evidence. However, ultimately, the decision of what weight, if any, to give to the evidence was up to the jury. The fact that the jurors obviously believed the witnesses' testimony and that the evidence was what it was purported to be does not make the admission of the evidence, or petitioner's ultimate conviction, wrongful.

For all of the foregoing reasons, petitioner simply is not entitled to relief based on this evidentiary claim.

### D. Improper Denial of Supervisory Review

Lastly, petitioner claims that the Louisiana First Circuit Court of Appeal improperly denied his post-conviction writ application by denying relief without issuing a written opinion. This claim fails for two reasons.

First, this claim likewise relates to a purported error in the state post-conviction proceedings. However, as previously explained, federal *habeas corpus* relief can be granted only to remedy errors which occurred at trial or on direct review; claims concerning errors in post-conviction proceedings simply are not cognizable. Morris v. Cain, 186 F.3d 581, 585 n.6 (5th Cir. 1999); see also Duff-Smith v. Collins, 973 F.2d 1175, 1182 (5th Cir. 1992); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *23 (E.D. La. Oct. 29, 2009); Baham v. Allen Correctional Center, Civ. Action No. 07-4075, 2009 WL 3148757, at *3 (E.D. La. Sept. 30, 2009); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *6 (E.D. La. Dec. 11, 2008).

Second, in any event, the federal constitution does not require that state appellate courts issue written opinions when denying relief. See, e.g., Taylor v. McKeithen, 407 U.S. 191, 194 n.4 (1972); White v. Scott, No. 97-6258, 1998 WL 165162, at *1 (10th Cir. Apr. 9, 1998); King v. Champion, 55 F.3d 522, 526 (10th Cir. 1995); Furman v. United States, 720 F.2d 263, 264 (2nd Cir. 1983); United States v. Baynes, 548 F.2d 481 (3rd Cir. 1977); Jones v. United States, No. 88 CIV. 3999, 1990 WL 6566, at *3 (S.D.N.Y. Jan. 24, 1990).

**RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Herbert Pichon be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from

a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415,

1430 (5th Cir. 1996) (en banc).[24]

New Orleans, Louisiana, this twenty-eighth day of September, 2012.

_Daniel E. Knowles, III_

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[24] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.